Nathan Brunette, OSB #090913
nathan.brunette@stoel.com
Ryan Kunkel, OSB # 154671
ryan.kunkel@stoel.com
Brian Bollt, OSB # 223576
brian.bollt@stoel.com
Austin Zuck, OSB # 257130
austin.zuck@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

*Attorneys for Plaintiffs OTO.COACH, INC.
and OTO US Fertility LP*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OTO.COACH, INC. and OTO US FERTILITY LP<br><br>Plaintiffs,<br><br>v.<br><br>VALERIY NASEDKIN, VN Consulting Services, and VLADIMIR LARIONOV,<br><br>Defendants. | CASE NO.: 3:26-cv-00057<br><br>COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES<br><br>DEMAND FOR JURY TRIAL |

Plaintiff OTO.Coach, Inc. ("OTO.Coach") and OTO US Fertility LP ("OTO.Fertility")

(collectively, "Plaintiffs" or "OTO"), by and through their undersigned counsel, file this

Complaint for Injunctive Relief and Damages against Defendants Valeriy Nasedkin ("Mr.

Nasedkin"), VN Consulting Services ("VN Consulting"), and Vladimir Larionov ("Mr.

Larionov") (collectively, the "Defendants").

## NATURE OF THE ACTION

1.     This action arises from Defendants' theft and willful misappropriation of OTO's

confidential and proprietary information, including trade secrets, algorithms, hardware designs,

and raw clinical data, in violation of the Defend Trade Secrets Act ("DTSA"), the Oregon

Uniform Trade Secrets Act ("OUTSA"), binding contractual obligations, and through trespass to

chattels and conversion of OTO's physical and intellectual property.

2.     Defendants are former employees of Omegawave, Inc., which OTO acquired in

2022.  Defendants became employees and/or consultants of OTO, exported and retained OTO's

trade secrets and confidential information at least by sending OTO's trade secrets and

confidential information to their personal email accounts and by refusing to return OTO Laptop

computers containing OTO's trade secrets and confidential information.  On information and

belief, Defendants recently co-founded and work for a competing business, Sapere Innovations

(aka Sapere Global), with Mr. Nasedkin identified as the Co-Founder and Head of Research and

Development and Mr. Larionov identified as the Physicist and Lead Engineer.

3.     OTO seeks emergency and permanent injunctive relief and damages to prevent

further harm and to recover for Defendants' unlawful conduct.

## THE PARTIES

4.     Plaintiff OTO.Coach, Inc. is a Canadian corporation with its principal place of

business at 5-42b West Wilmot St., Richmond Hill, ON, L4B 2P3.

5.     Plaintiff OTO US Fertility LP is a Delaware corporation, having an address of

16192 Coastal Hwy, Lewes, Delaware, 19958.

6.     Defendant Valeriy Nasedkin is an individual who, on information and belief, resides in Portland, Oregon.

7.     Defendant VN Consulting Services is a purported business associated with Mr. Nasedkin, with a last known principal place of business of 4703 SW Caldew St. Unit 1, Portland, OR 97219, USA.

8.     Defendant Vladimir Larionov is an individual who, on information and belief, resides in Eugene, Oregon.

## JURISDICTION AND VENUE

9.     Plaintiff OTO.Coach is a citizen of Canada, Plaintiff OTO.Fertility is a citizen of Delaware, and all Defendants are citizens of Oregon.  Therefore, this Court has jurisdiction over this matter as there is complete diversity between the parties because no plaintiff is a citizen of the same state as any defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     This Court has subject matter jurisdiction over the DTSA claim pursuant to 18 U.S.C. § 1836 and 28 U.S.C. § 1331.

11.     The Court has supplemental subject matter jurisdiction over the state tort, trade secrets, and contract claims pursuant to 28 U.S.C. § 1367, as they arise out of the same facts and circumstances that give rise to the DTSA claim under federal law.

12.     The Court has personal jurisdiction over the parties in this matter.  Mr. Nasedkin and Mr. Larionov resided in Oregon while being employed or having contractual relationships with OTO and Omegawave.  VN Consulting Services is a company with a last known principal place of business in Portland, Oregon.  Mr. Nasedkin and Mr. Larionov have also subjected themselves to this Court's jurisdiction in proceedings in this District in VN Consulting in

*Nasedkin v. OTO.Coach Inc. et al.*, Case No. 3:25-cv-01081 (D. Or., filed June 24, 2025) and

*Larionov v. OTO US Fertility LP et al.*, Case No. 6:25-cv-01489 (D. Or., filed August 20, 2025).

13.    Venue is proper in this District under 28 U.S.C. § 1391(b) because, on

information and belief, Defendant Mr. Nasedkin and Defendant VN Consulting reside in

Portland, Oregon, Mr. Larionov resides in Eugene, Oregon, and the acts and omissions giving

rise to these claims occurred in the District of Oregon.

## **BACKGROUND**

### A.  OTO's Mission and Technology

14.    OTO is a health technology innovator dedicated to transforming how individuals

understand and optimize their well-being.  OTO.Coach, Inc. is the parent company of three

subsidiary companies: OTO.Train, OTO.Health, and OTO.Fertility.

15.    At its core, OTO combines medical-grade wearable technology with proprietary

software to provide precise, non-invasive assessments of the body's most critical systems—

cardiac, central nervous, autonomic, hormonal, and energy regulation.  In just a few minutes a

day, users receive personalized insights and coaching that empower them to make informed

decisions about fitness, recovery, fertility, and overall health.  OTO's mission is to make the

complex simple, turning advanced physiological data into clear, actionable steps that help its

users get fit, stay resilient, and thrive.

16.    OTO's product portfolio reflects its commitment to innovation and accessibility.

The OTO Life App serves as a daily wellness companion that quantifies stress resilience and

provides tailored activity, recovery, and relaxation plans.  The OTO Chest Strap and Sensor offer

medical-grade wearable technology that captures advanced metrics like ECG, EEG/DC potential,

and HRV for holistic health monitoring.

17.     OTO.Fertility extends OTO's proven science to help people experience one of life's most important journeys: starting a family.  OTO.Fertility decodes the body's stress biology and recovery patterns to empower users and improve conception outcomes.  Using a clinical-grade biosensor and the OTO.Fertility software application, patients and clinics gain real-time clarity on physiological readiness, enabling personalized care that increases pregnancy success rates.

18.     Unlike generic fertility trackers, OTO.Fertility measures over fifty specially-identified physiological signals, including heart rate variability and nervous system regulation, to calculate a Fertility Index—a predictive score that reflects the body's readiness for conception.  This insight helps patients and providers optimize timing, reduce stress, and improve outcomes across IVF, IUI, and natural conception.  From preconception to postpartum, OTO.Fertility delivers continuous support, making the journey clearer, calmer, and more informed.

19.     OTO.Fertility's products and services are based in part on technology originally developed by Omegawave, which OTO strategically acquired in 2022.  OTO acquired Omegawave for its unique, proprietary algorithms and hardware that were largely being used in sports and medical applications.  OTO's acquisition of Omegawave included a contractual obligation for Omegawave and its employees to transfer Omegawave's assets to OTO— including all intellectual property, hardware designs, data, trade secrets, confidential information, and otherwise.

20.     OTO.Fertility sells The OTO Fertility Biosensor, a chest-worn sensor that integrates with clinics to deliver predictive insights for conception success. Looking ahead, OTO is developing OTO Cira™, the world's first wrist-worn biosensor designed for fertility prediction with clinical-grade accuracy, scheduled for release in 2026.

21.     OTO's hardware sensors and software algorithms provide users with superior information and accuracy.  The nature, volume, rate, and additional attributes of data and personal health information collected by OTO's sensors are proprietary and possess significant independent economic value.  The software that manages data collection, analysis, evaluation, and processing to deliver useful, tailored information to users is also proprietary and possess significant independent economic value.

22.     In the development of OTO's product and service offerings, OTO developed roadmaps for, among other things, current and future products and for research and development. OTO also developed business strategy documents and product plans.  OTO also expended, and continues to expend, significant time and resources in its partnerships with health and technical experts, research institutions, and universities to extensively study and improve its products. This work includes collecting personal data and information about patients who have signed up for clinical trials.  This clinical data is critical to OTO's development of its products—it helps OTO improve its hardware and software products, study certain human characteristics, and identify which characteristics are most important to isolate and weigh in comparison to other characteristics to provide accurate and helpful information to its users depending on what the user cares most about—whether that is fertility, fitness, overall wellbeing, or otherwise.

23.     Since its inception, OTO has consistently re-invested in itself.  OTO, and its products and services, continue to evolve and provide the most advanced and impactful products on the market.  As a result, OTO has invested millions of dollars in developing and protecting these proprietary technologies and trade secrets, including through heightened security protocols, patent filings, strict confidentiality agreements with its employees, consultants, and other third-party providers, as well as through other means.

**B.  Defendants' Involvement in Omegawave, OTO, and Acquisition and IP Assignment**

24.     Defendants Mr. Nasedkin and Mr. Larionov became involved with OTO through OTO's acquisition of Omegawave.  On information and belief, Mr. Nasedkin worked for Omegawave for over 24 years, and held the title of Co-Founder, Vice President of Business Development of Omegawave. On information and belief, Mr. Larionov was a Director of System Development at Omegawave.

25.     As a part of OTO's acquisition of Omegawave, Mr. Larionov and Mr. Nasedkin agreed to work for and with OTO to continue developing OTO's revolutionary products, particularly with respect to the OTO.Fertility products and services.  Mr. Nasedkin signed a consulting agreement with OTO through Mr. Nasedkin's consulting company, VN Consulting. Mr. Larionov joined OTO as an employee, signing an OTO employment agreement.  On information and belief, both Mr. Nasedkin and Mr. Larionov signed employment agreements with Omegawave.  Each of the OTO employment agreement, Omegawave employment agreement, and VN Consulting agreement included assignments of intellectual property to OTO and strict confidentiality provisions, as shown below.

26.     Mr. Larionov's OTO employment agreement includes a confidentiality provision reciting:

> **8.     CONFIDENTIALITY OBLIGATIONS**
>
> The Employee shall not, during their employment or at any time thereafter divulge, publish or otherwise reveal either directly or indirectly or through any person, firm or company the private affairs or secrets of the Corporation, its subsidiaries or affiliates to any person or persons and shall not without the prior written consent of the Corporation either during their employment or at any time thereafter use for their own purpose or any purpose other than those of the Corporation any information they may acquire in relation to the business and affairs of the Corporation. The Employee agrees, during their employment and at all times thereafter to keep confidential all information and material provided to him by the

Corporation, excepting only such information as is already known to the public, and including any such information and material relating to any customer, vendor or other party transacting business with the Corporation, and not to release, use or disclose the same except with the prior written permission of the Corporation. The within understanding shall survive the termination or cancellation of this Agreement, even if occasioned by the Corporation's breach or wrongful termination. Each of the Employee and the Corporation agree to keep the financial terms of this Agreement confidential, except to the extent as may be required for compliance with applicable regulatory and securities rules, regulations and laws.

27.     The Omegawave employment agreement signed by both Mr. Nasedkin and Mr.

Larionov includes a confidentiality provision reciting, in part:

1.      **PROPRIETARY INFORMATION.**

**(a) <u>Confidential Restrictions</u>.** I understand that, during the course of my work as an employee of the Company [Omegawave, Inc.], I have had, and in the future, will have, access to Proprietary Information (as such term is defined in paragraph (b) of this Section 1) concerning the Company and its affiliates, clients, customers and vendors. I acknowledge that the Company has developed, compiled and otherwise obtained, often at great expense, such Proprietary Information, which has great value to the Company's business. During the term of my employment with the Company and for all times thereafter, I agree:

(i) to hold in strict confidence all Proprietary Information;

(ii) not to disclose any Proprietary Information to anyone outside of the Company;

(iii) not to use, copy, publish, summarize or remove from Company premises Proprietary Information (except during my employment with the Company to the extent necessary to carry out my responsibilities as an employee of the Company);

(iv) that the publication of any Proprietary Information through literature or speeches must be pre-approved in writing by the Company's Chief Executive Officer (or appointee thereof); and

(v) if I am required by legal process to disclose any Proprietary Information, to (A) provide the Company with prompt notice thereof so that the Company may seek a protective order or other appropriate remedy to prevent or limit the disclosure of any

Proprietary Information and (B) fully cooperate with the Company's application for a protective order or other remedy and, in any event, to disclose only that portion of the Proprietary Information that I am legally required to disclose.

…

28.    The VN Consulting agreement signed by Mr. Nasedkin includes a confidentiality provision reciting, in part:

### 8.    Confidentiality

(1) The Consultant acknowledges that it will learn about, help to develop, be exposed to, and be entrusted with Confidential Information (as hereinafter defined). The Consultant agrees to hold in strict confidence and to not directly or indirectly use or disclose, either during the Term or after termination of this Agreement (for any reason), any Confidential Information that it obtains, creates or comes to know during the Term (whether or not during working hours), except to the extent authorized in writing by the Client.

(2) The Consultant agrees not to make copies of Confidential Information except as authorized by the Client. Consultant acknowledges and agrees that the Confidential Information will at all times remain the sole property of the Client and will be held by the Consultant in a fiduciary capacity. The Consultant further acknowledges and agrees that the Confidential Information is confidential, has competitive value, and is being provided to it solely for the purposes of and in connection with this Agreement. Upon termination of this Agreement, or upon an earlier request of the Client, the Consultant will destroy or return to the Client all tangible forms of such Confidential Information in its possession or control including summaries, copies or reproductions thereof. The destruction or return of Confidential Information shall in no way relieve the Consultant of any obligation of confidentiality contained herein.

(3) The Consultant recognizes that the Client may have received and, in the future, may receive from third parties their Confidential Information subject to a duty on the Client's part to maintain the confidentiality of such information and to use it only for certain limited purposes. The Consultant agrees to hold all such Confidential Information of third parties in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out the Services for the Client consistent with the Client's agreement with such third party.

(4) The Consultant acknowledges that the Client will suffer immediate and irreparable harm, loss and damage not adequately compensable by monetary damages if the Consultant were to violate any of the foregoing provisions.

(5) For the purpose of this Section, "Confidential Information" means confidential and proprietary information, presented in any form whatsoever including verbal, written, visual, auditor, electronic, or other forms, pertaining to any aspect of the Client or its business, affairs, operations, customers, suppliers, products, intellectual property and inventions that are owned or licensed by the Client and that are not available to the general public or the Client's competitors, and includes, but is not limited to:

…

29.     In connection with Defendants' employment and work with OTO, OTO purchased laptop computers and iPads (the "OTO Laptops") for Defendants to use for their OTO-related work.  Defendants purchased the OTO Laptops, and OTO reimbursed Defendants for the OTO Laptops.  The OTO Laptops were equipped with company security systems, including password entry, secure access, and other requirements.  This security included at least maintaining company documents and information in a secure Microsoft SharePoint and OneDrive environment that is only accessible through two-factor authentication using an employee's approved OTO email address.

30.     It was only through these secure OTO Laptops that the Defendants were intended to integrate the Omegawave technology into OTO's products and services.  Defendants participated in the development of OTO's sensors, firmware code, and migration of technology, including from OTO.Fertility's existing chest strap to OTO.Fertility's unreleased wrist-wearable device.

31.     It was also through these OTO Laptops that Defendants had access to, and maintained, OTO's most sensitive trade secrets, including proprietary algorithms, raw clinical data, hardware designs, source code, business plans, amongst others.

32.     In connection with Defendants' employment and work at Omegawave, Defendants were in possession of certain Omegawave Property, for example Omegawave drivers and software systems, including the Omegawave 4.0 software.  After that acquisition, and during Defendants' relationship with OTO, Defendants continued to maintain this Omegawave Property. On information and belief, after Defendants left OTO, Defendants did not return, and have continued to maintain and use, this proprietary Omegawave property to which OTO has the legal right through at least its acquisition of Omegawave.

### C. Defendants' Unlawful Misappropriation of Confidential Information and Trade Secrets

33.     OTO recently discovered that Defendants were misappropriating OTO's proprietary documents and information, including algorithms, source code, raw data, hardware specifications, and project plans.  Defendants also took algorithm outputs, EMR records, project proposals, business plans for predictive health technologies, codebase reviews, Matlab environments, and other technical documentation.  Defendants' misappropriation included highly valuable and important information and technology essential to OTO's success and instrumental to its competitive advantage over its competitors.  The trade secrets and confidential information Defendants misappropriated include key documents that may be used to recreate OTO's technology and start a competing business.

34.     Some of the patient and user data that Defendants unlawfully misappropriated was not maintained in OTO's document repositories. It was only maintained on one or both of Defendants' OTO Laptops.  In other words: Defendants are the only ones who have access to certain confidential and proprietary information that was developed and generated by OTO or Omegawave, and that belongs to OTO.  This is a result of Defendants removing or not uploading

information owned by OTO to OTO's document systems, and of Defendants' unlawful withholding of this information from OTO.

35.     Additionally, in at least February, April, and June 2025, Defendants sent confidential information owned by OTO from Defendants' OTO company emails to Defendants' personal email accounts.  On information and belief, Defendants used the OTO Laptops to send this information from their OTO company emails to Defendants' personal email accounts.  On information and belief, Defendants continue to hold at least a portion of these misappropriated materials and information on their OTO Laptops and/or other devices or accounts in their possession, custody, or control.

36.     Prior to filing this Complaint, OTO requested that Defendants return the OTO Laptops and misappropriated trade secrets and information.  Recently, Mr. Larionov produced some documentation purportedly related to Defendants' misappropriation, but the production did not include the OTO Laptops or the entirety of the documents and communications that Defendants sent from their OTO emails to their personal emails.  The production also included more documents and information of which OTO was previously aware.  This reinforces OTO's beliefs and allegations that the breadth of the misappropriated OTO trade secrets and confidential information is significant, that the exposure and damages associated with Defendants' actions is severe, and that discovery will uncover additional misappropriation.  With respect to the OTO Laptops, Defendants contend that the OTO Laptops are "personal" devices, despite being company property that were paid for by OTO.

37.     Defendants' breach of contract and misappropriation, withholding, and conversion of OTO's proprietary, highly valuable, and highly confidential information causes significant actual and potential harm to OTO.  Defendants are no longer employees or consultants for OTO.

Defendants' maintaining of OTO's confidential information outside of OTO's secure systems increases the risk of public disclosure, the disclosure of which would sacrifice OTO's business interests at least through the release of information to be the subject of patent filings, or trade secret and proprietary algorithms that OTO intends to maintain as trade secrets.

**D. Defendants Co-Found and Start Work at a Competing Business**

38.     Defendants are now involved in a competing company, Sapere (https://sapere.global/).  On information and belief, Mr. Nasedkin is the Co-Founder and Head of Research and Development.  On information and belief, Mr. Larionov is the Physicist and Lead Engineer.  Other key members of Sapere are previous OTO employees.  For example, Tiffany Holbrook, the Co-Founder and CEO of Sapere, was previously the Director of Strategic Development at OTO.Coach.  And Kathy Jimenez, the Head of Brand at Sapere, was previously an OTO.Coach employee responsible for design and communications.

39.     On information and belief, Defendants are using OTO's trade secrets and confidential information to and seek funding for a competing business and to develop competing products.  On information and belief, Defendants have breached the contractual confidentiality provisions recited above.

40.     Defendants' misappropriation of confidential information and trade secrets, breaches of confidentiality, and participation in a competing business also cause actual and potential harm to OTO, at least through the use of OTO's proprietary technology and business strategies to, on information and belief, found a competing company and develop competing products and services.

## CAUSES OF ACTION

### COUNT I: MISAPPROPRIATION OF TRADE SECRETS
### (DTSA)

41.    OTO realleges and incorporates by reference each of the prior paragraphs.

42.    The federal Defend Trade Secrets Act ("DTSA"), at 18 U.S.C. § 1839(3), states

that a:

> '[T]rade secret' means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

43.    OTO's highly confidential algorithms, hardware designs, raw clinical data, and

business plans, as collected and stored on OTO's secure computer systems and in its business

records, constitute trade secrets.

44.    OTO's trade secrets derive independent actual and potential economic value from

not being generally known or readily ascertainable to others by lawful means. OTO has put into

place physical, legal, and cyber security measures to protect the confidentiality of its trade

secrets, including security software, two factor authentication, access credentials/passwords,

contractual confidentiality agreements, company policies, and other measures.  These safeguards

are reasonable to maintain secrecy.

45.     OTO has invested substantial time and money in developing its trade secrets and in its efforts to protect and maintain the secrecy thereof.

46.     Defendants willfully and maliciously misappropriated OTO's trade secrets by accessing, transmitting, copying, using, and retaining them, in violation of their duty not to make unauthorized use or disclosure of OTO's trade secrets.

47.     Defendants' misappropriation of OTO's trade secrets was willful and malicious. OTO is entitled to actual damages, exemplary damages, attorneys' fees, and costs.  As an additional result of Defendants' willful and malicious misappropriation, OTO is entitled to disgorgement of Defendants' profits (if any) as ill-gotten gains.

48.     As a direct and proximate result of Defendants' trade secret misappropriation, OTO has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.  Such irreparable harm will continue unless Defendants' acts are restrained and enjoined during and after this action.

### COUNT II: MISAPPROPRIATION OF TRADE SECRETS
### (OREGON UNIFORM TRADE SECRETS ACT)

49.     OTO realleges and incorporates by reference each of the prior paragraphs.

50.     The Oregon Uniform Trade Secrets Act ("OUTSA"), at ORS 646.461(4), defines a "trade secret" as:

> [I]nformation, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

51.     OTO's highly confidential algorithms, hardware designs, raw clinical data, and business plans, as collected and stored on OTO's secure computer systems and in its business records, constitute trade secrets.

52.     OTO's trade secrets derive independent actual and potential economic value from not being generally known or readily ascertainable to others by lawful means.  OTO has put into place physical, legal, and cyber security measures to protect the confidentiality of its trade secrets, including security software, two factor authentication, access credentials/passwords, contractual confidentiality agreements, company policies, and other measures.  These safeguards are reasonable to maintain secrecy.

53.     OTO has invested substantial time and money in developing its trade secrets and in its efforts to protect and maintain the secrecy thereof.

54.     Defendants willfully and maliciously misappropriated OTO's trade secrets by accessing, transmitting, copying, using, and retaining them, and also by eliminating OTO's access to them, in violation of their duty not to make unauthorized use or disclosure of OTO's trade secrets.

55.     Because Defendants' misappropriation of OTO's trade secrets was willful and malicious, OTO is also entitled to actual damages, exemplary damages, attorneys' fees, and costs.  As an additional result of Defendants' willful and malicious misappropriation, OTO is entitled to disgorgement of Defendants' profits (if any) as ill-gotten gains.

56.     As a direct and proximate result of Defendants' trade secret misappropriation, OTO has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.  Such

irreparable harm will continue unless Defendants' acts are restrained and enjoined during and after this action.

## COUNT III: BREACH OF CONTRACT
## (CONFIDENTIALITY)

57.    OTO realleges and incorporates by reference each of the prior paragraphs.

58.    Defendants entered into and acknowledged valid, binding, and legally enforceable Agreements with OTO.

59.    Defendants received full consideration under the Agreements from OTO.

60.    Defendants failed to perform under those Agreements and have subverted them through the conduct set forth in this Complaint, including the use and disclosure of confidential documents and information in violation of strict confidentiality clauses in the OTO, Omegawave, and/or VN Consulting agreements.  Defendants' actions constitute breaches of these agreements.

61.    As a direct and proximate result of Defendants' breaches of contract, OTO has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.  Such irreparable harm will continue unless Defendants' acts are restrained and enjoined during and after this action.

## COUNT V: TRESPASS TO CHATTLES

62.    OTO realleges and incorporates by reference each of the prior paragraphs.

63.    OTO is the sole owner of OTO's highly confidential documents and information, including algorithms, hardware designs, raw clinical data, and business plans, as collected and stored on OTO's secure computer systems and in its business records.

64.    OTO put into place physical, legal, and cyber security measures to protect the confidentiality of its trade secrets, including security software, two factor authentication, access

credentials/passwords, contractual confidentiality agreements, company policies, and other measures.

65.     OTO's materials are proprietary and highly valuable to OTO.  OTO has not authorized Defendants to move or maintain the proprietary and highly confidential materials to a location outside OTO's control without the protection of a Non-Disclosure Agreement.

66.     Defendants accessed and copied OTO's confidential information to a location outside OTO's control for Defendants' use, knowing that Defendants did not have permission to take OTO's confidential information for Defendants' use.

67.     Defendants intentionally exercised control over and are retaining OTO's confidential information and property without OTO's permission and have co-founded and/or joined Sapere, a competitor to OTO.  Defendants' trespass and conversion seriously interfere with OTO's right to control this property as the property is either in Defendants' exclusive control or in Defendants' control and Defendants' use of the misappropriated property erodes OTO's benefit in the property.  Defendants continue to exercise complete control over certain of this property, do not have a right to this property, are not acting in good faith, and have been interfering with OTO's right to control the property for months.  Defendants' trespass and conversion have significantly inconvenienced and caused harm and expense to OTO.  These circumstances threaten OTO at least by increasing likelihood that Defendants will disclose, or already have disclosed, OTO's confidential information to Sapere and that Defendants will use OTO's confidential information and trade secrets to design, sell, and manufacture competing products or services for Sapere.

68.　　OTO has been harmed by the misappropriation of OTO's confidential information and by the unlawful retention of the same by Defendants, including the loss of control over OTO's confidential information.

69.　　As a direct and proximate result of Defendants' actions, OTO has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.　Such irreparable harm will continue unless Defendants' acts are restrained and enjoined during and after this action.

## COUNT VI: CONVERSION

70.　　OTO realleges and incorporates by reference each of the prior paragraphs.

71.　　At all relevant times, OTO was the lawful owner of, or otherwise had the right to possess, the OTO confidential information and the OTO Laptops.

72.　　Defendants intentionally and without lawful justification exercised dominion and control over OTO's property, substantially interfering with OTO's rights to possession. Defendants' intentional exercise of control deprives OTO of its property rights in, or use or possession of, OTO's property without the OTO's consent and without lawful justification.

73.　　OTO demanded the return of the property, but Defendants refused and continue to refuse to return said property.

74.　　As a direct and proximate result of Defendants' wrongful acts, OTO has suffered damages in an amount to be determined at trial, including but not limited to the value of the property, loss of use, and consequential damages.

75.　　As a direct and proximate result of Defendants' actions, OTO has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.　Such irreparable harm will continue unless Defendants' acts are restrained and enjoined during and after this action.

## PRAYER FOR RELIEF

**WHEREFORE**, OTO respectfully requests judgment in its favor and against

Defendants by:

A.  Granting a preliminary injunction and permanent injunction restraining

Defendants from using, disclosing, or retaining OTO's trade secrets, confidential

information, and other property, including in Defendants operation of or working

for Sapere,

B.  Ordering Defendants to return all copies of OTO's trade secrets and confidential

information in their possession, including the OTO Laptops or any other property

belonging to OTO and unlawfully possessed by Defendants;

C.  Awarding OTO compensatory, consequential, and exemplary damages for trade

secret misappropriation, breach of contract, and tortious actions, including lost

profits, unjust enrichment, and restitution;

D.  Awarding OTO its reasonable attorneys' fees and costs;

E.  Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

OTO demands a trial by jury on all issues so triable.

DATED:  January 9, 2026                    STOEL RIVES LLP


                                           s/ Nathan C. Brunette
                                           Nathan C. Brunette, OSB #090913
                                           nathan.brunette@stoel.com
                                           Ryan Kunkel, OSB # 154671
                                           ryan.kunkel@stoel.com
                                           Austin Zuck, OSB # 257130
                                           austin.zuck@stoel.com
                                           Brian Bollt, OSB # 223576
                                           brian.bollt@stoel.com
                                           STOEL RIVES LLP
                                           760 SW Ninth Avenue, Suite 3000
                                           Portland, OR 97205
                                           Telephone: 503.224.3380
                                           Facsimile: 503.220.2480

                                           *Attorneys for Plaintiffs OTO.COACH, INC.
                                           and OTO US Fertility LP*